IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 11-CR-6051 (DGL) |
| -vs- | **UNITED STATES'** |
| | **POST-HEARING** |
| WILLIAM H. SCHLIEBENER, JR. | **MEMORANDUM OF LAW** |
| Defendant. | |

The United States of America, through its attorneys, William J. Hochul, Jr., United States Attorney for the Western District of New York, and Tiffany H. Lee, Assistant United States Attorney, of counsel, does hereby make and file its post-hearing memorandum of law.

## PROCEDURAL HISTORY

The defendant, William H. Schliebener, Jr., currently stands indicted in a two-count indictment charging him with offenses relating to child exploitation. The defendant in his omnibus motions has moved to suppress statements he made to Lee County Sheriff's officers on or about October 3, 2010 and to suppress tangible evidence seized in the execution of a search warrant at his residence, in Sanford, North Carolina, on or about October 4, 2010. Lee County Sheriff's officers Justin Matthews and Ken Gilstrap testified for the government at the hearing.

For those reasons stated below, the United States opposes the defendant's motions to suppress the evidence seized and his statements.

Lee County Sheriff's Office Patrol Deputy Justin Matthews was working on October 3, 2010 when he was dispatched to 825 Walker Road, Sanford, North Carolina to locate a missing fourteen-year-old individual. Tr. at 6-7. The request to locate the juvenile had been made by a detective with the Canandaigua Police Department. Matthews was provided with the address of 825 Walker Road and the defendant's name, William Schliebener. Tr. at 7. At approximately 6:30 p.m., Matthews arrived at the location in his patrol car. Upon arriving at the location, he encountered a male sitting outside of the residence, a single-wide trailer mobile home with a porch. Tr. at 7-8. Matthews parked his patrol car in the driveway and approached the front door. Tr. at 8. The male subject was either on the porch or at the bottom of the steps coming off the porch.

Matthews, who was in his Class A uniform, approached the male subject and identified himself. Tr. at 8-9. The male subject identified himself as the defendant, William Schliebener. Tr. at 8. Matthews asked the defendant whether there was anybody else at the residence and the defendant replied "no." Tr. at 10. Matthews explained that he was looking for a specific juvenile and provided the girl's identity to the defendant. Tr. at 10. The defendant indicated that he knew the juvenile and had been contacting her through the computer. When Matthews asked specifically if the juvenile was in the residence, Schliebener replied "no." Tr. at 10. Matthews then asked for consent to search the defendant's residence. Tr. at 11. The defendant gave Matthews verbal consent at which time Matthews requested assistance from another deputy for the search. Tr. at 11.

Matthews then explained to the defendant that he was not there by accident and that he had been sent by the police department out of Canandaigua to attempt to locate the juvenile. Tr. at 11. The defendant then dropped his head into his hands and asked Matthews how much trouble he would be in if the juvenile was at the residence. Tr. at 12. Matthews replied that he did not know how much trouble the defendant would be in at which point the defendant advised Matthews that the juvenile was inside the residence. Tr. at 12.

At that time, Matthews placed the defendant in handcuffs and explained that the defendant was being detained until Matthews could complete his investigation. Tr. at 12. The defendant and Matthews then began yelling out the juvenile's name for her to come out of the residence. Tr. at 12, 26. After several times, the juvenile exited the residence. Tr.at 12.

Lee County Sheriff's Corporal Ken Gilstrap was also working on October 3, 2010 when he was called to assist Deputy Matthews. Tr. at 36. He arrived at 825 Walker Road, Sanford, North Carolina at around 18:40 hours in his patrol vehicle. Tr. at 36. He was wearing his uniform and utility belt. Tr. at 36. Upon arriving, at the residence, Gilstrap observed Matthews at the front of the residence with the defendant and the juvenile female. Tr. at 37.

Gilstrap spoke with the female juvenile and asked her how she got from New York to Sanford, North Carolina. Tr. at 38. Gilstrap also asked the female juvenile if she had

any belongings inside the residence. Tr. at 38-39. The juvenile indicated that she did have belongings inside the residence but she could not tell Gilstrap exactly where they were. Tr. at 39. Gilstrap's conversation with the juvenile took place in the front of Deputy Matthew's patrol car. Tr.at 39.

Gilstrap and the victim then walked to the front of the residence where Matthews was with the defendant. Tr. at 39. Gilstrap asked the defendant, who was handcuffed, if he and the juvenile could go inside the residence to retrieve the victim's belongings. Tr. at 39. The defendant responded that they could. Tr. at 39. Gilstrap went into the residence with the juvenile victim. Tr. at 40. They went down the hall to the right to a bedroom and retrieved two suitcases, a backpack and some clothing on the floor, gathered her belongings and exited the residence. Tr. at 40.

### I. **NO MIRANDA WARNINGS WERE REQUIRED BECAUSE DEFENDANT WAS NOT IN CUSTODY**

The requirement for Miranda warnings applies only to custodial interrogations. United States v Newton, 369 F.3d 659, 669 (2d Cir. 2004). The ultimate inquiry for determining whether an individual is in custody for the purposes of Miranda is "whether there is a 'formal restraint on freedom of movement' of the degree associated with a formal arrest." Id. at 670.

The Second Circuit in Newton determined that it would make sense for a court to begin any custody analysis by first asking whether a reasonable person would have thought he or she was free to leave the police encounter at issue. Id. at 672. "If the answer is yes,

the Miranda inquiry is at an end; the challenged interrogation did not require advice of rights." Id. If a reasonable person would not have thought himself free to leave, then additional analysis is required. "In such cases, a court must ask whether, in addition to not feeling free to leave, a reasonable person would have understood his or her freedom of action to have been curtailed to a degree associated with a formal arrest." Id.

In Newton, the defendant opened his door to six law enforcement officers, one of whom proceeded to handcuff him. The officers' purpose in going to the apartment Newton was in was to investigate a report that he illegally possessed a firearm and had recently threatened some people. The officers went inside the apartment, searched the premises, found the gun and placed Newton under arrest. Id. at 663-64.

The Second Circuit examined whether the situation arose to one where the defendant was in custody by looking at two factors: (1) whether a reasonable person in the suspect's shoes would have understood that his detention was not likely to be "temporary and brief", and (2) whether a person under the circumstances would feel "completely at the mercy of police." Id. at 675. Under the facts of Newton, the Second Circuit found the fact that the defendant was immediately placed in handcuffs to be the problematic factor in the analysis. Other factors, such as the number of officers at the door and Newton's prior experience with parole officers, weighed strongly against Newton's belief that he was in custody. Id. Additionally, the court noted that "absent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial." Id.

In the instant case, the problematic factor of Newton is not present here: at no time was the defendant handcuffed during the time he was making the statements to Deputy Matthews. The conversation with Deputy Matthews took place outside the defendant's

residence at 825 Walker Road, near the front porch area of the defendant's single-wide mobile home.

At no time during the brief interview did the defendant request that the questioning cease. United States v Cota, 953 F.2d 753, 759 (2d Cir. 1992). Nor was the defendant's movement impaired. Id. If custody cannot be proved, "only questioning that reflects a measure of compulsion above and beyond that inherent in custody itself constitutes interrogation the fruits of which may be received only after Miranda warnings have been given." Id. at 758.

## II. THE DEFENDANT'S STATEMENTS WERE VOLUNTARILY MADE

Voluntariness is "interrelated, but analytically distinct" from the issue regarding whether or not a defendant was subject to custodial interrogation. See Tankleff v Senkowski, 135 F.3d 235, 242 (2d Cir. 1998). A statement is involuntary if agents obtain it by "'techniques and methods offensive to due process' or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will.'" Oregon v Elstad, 470 U.S. 298, 304 (1985) (quoting Hayes v Washington, 373 U.S. 503, 515 (1963)). The fact that a defendant is not in custody does not prevent a disputable issue that a confession is involuntary. See Beckwith v United States, 425 U.S. 341, 347-48 (1976). The burden lies with the government to show, by preponderance of the evidence, that a confession was given voluntarily. Colorado v Connelly, 479 U.S. 157, 168 (1986).

"Whether a confession was obtained by coercion is determined only after careful evaluation of the totality of circumstances." Green v Scully, 850 F.2d 894, 901 (2d Cir. 1988); see also Tankleff, 135 F.3d at 245. These circumstances are analyzed in order to

6

determine whether the agents' conduct "was such as to overbear [a defendant's] will to resist and bring about confessions not freely self-determined." United States v Guarno, 819 F.2d 30 (2d Cir. 1987); see also Rogers v Richmond, 365 U.S. 534, 544 (1961). Some of the factors to be considered in the analysis include "the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation." United States v Alvarado, 882 F.2d 645, 649 (2d Cir. 1989) (quoting United States v Mast, 735 F.2d 745, 749 (2d Cir. 1984)). Additional circumstances to be considered are 1) the accused's characteristics, 2) the conditions of the interrogation, and 3) the conduct of the police. United States v Anderson, 929 F.2d 96, 99 (2d Cir. 1991). Connelly additionally states that "coercive police activity is a necessary predicate to the finding that a confession is not "voluntary"..." Connelly, 479 U.S. at 167.

Here, the defendant did not appear impaired, understood English and was responsive to the questions of Matthews. Tr. at 13. Matthews did not arrest the defendant and did not place him in handcuffs during the brief period of the initial questioning. Tr. at 13. Finally, the conduct of the law enforcement officer should be considered as a factor in any assessment of the voluntariness of the defendant's statements and consent. At no time did Matthews threaten the defendant or make any empty promises to him. Tr. at 13. Based on the totality of the circumstances, the defendant's statements were voluntarily made.

### III. DEFENDANT'S CONSENT TO ALLOW CORPORAL GILSTRAP TO RE-ENTER THE RESIDENCE TO RETRIEVE THE VICTIM'S BELONGINGS WAS VOLUNTARILY GIVEN

A warrantless search is permissible if based upon the valid consent of a person authorized to provide consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); United States v. Elliott, 50 F.3d 180, 185 (2d Cir. 1995). The consent need only be voluntary, that is, obtained without coercion, even if it was given without knowledge of the right to refuse consent. Schneckloth, 412 U.S. at 241-42; United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995). Voluntariness of consent is determined based upon the totality of the circumstances. Schneckloth, 412 U.S. at 227; United States v. Hernandez, 5 F.3d 628, 632 (2d Cir. 1993); United States v. Kon Yu-Leung, 910 F.2d 33, 41 (2d Cir. 1990). Relevant factors include the following: age, education, background, and physical and mental condition of the defendant, the setting in which the consent is obtained, whether Miranda warnings are administered and whether the individual has knowledge of the right to refuse consent. Schneckloth, 412 U.S. at 226; Kon Yu-Leung, 910 F.2d at 41.

"Consent must be a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority," United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993), and the fact that it is obtained while the individual is in custody does not render it involuntary, United States v. Arango-Correa, 851 F.2d 54, 57 (2d Cir. 1988), although it does "require more careful scrutiny." United States v. Wiener, 534 F.2d 15, 17 (2d Cir. 1976). The government bears the burden of establishing by a preponderance of the evidence that the consent was voluntary. United States v. Isiofia, 370 F.3d 226, 230 (2d Cir. 2004). "The ultimate question presented is whether the officer had a reasonable

basis for believing that there has been consent to the search." Isiofia, 370 F.3d at 231 (internal quotations and citations omitted).

When the defendant first gave Deputy Matthews consent to search his residence, in viewing the totality of the circumstances, the consent was voluntarily given. The defendant had given his consent prior to being handcuffed, had demonstrated an understanding of English and did not appeared to be physically impaired. In addition, his consent was not based on any threats or promises made by Deputy Matthews.

Later, the defendant's consent to allow Corporal Gilstrap to enter the residence to retrieve the victim's belongings was also voluntarily given. Although the defendant was handfcuffed, the Second Circuit has "repeatedly observed that neither the fact that a person is in custody nor that she has been subjected to a display of force rules out a finding of voluntariness. United States v. Moreno, 701 F.3d 64, 77 (2d Cir. 2012); see also, United States v. Crespo, 834 F.2d 267, 271 (2d Cir. 1987) ("That Crespo's was under arrest and in custody, or even handcuffed, does not as a matter of law require a finding of coercion."). Nor was the defendant subjected to any intensive interrogation by Corporal Gilstrap in order to get him to acquiesce to allowing Gilstrap and the victim to enter the home. See, United States v. Arango-Correa, 851 F.2d 54, 57 (2d Cir. 1988).

Moreover, the scope of the consent was not to allow Gilstrap to search the defendant's residence; rather it was limited to allowing Gilstrap brief entry to retrieve the victim's belongings. There is no evidence to suggest that Gilstrap exceeded the limited

scope of the voluntary consent given to him by the defendant. As Gilstrap testified, all he did was to go inside the defendant's residence with the victim, collect the victim's belongings and leave the residence. Tr. at 41. Gilstrap did not conduct any search of the residence and did not take any notes as to what he might have observed while he was in the residence. Tr. at 41. Gilstrap did not seize any items other than the victim's belongings. Tr. at 41.

IV. **NO SEARCH OCCURRED BY THE LAW ENFORCEMENT OFFICER CALLING OUT FOR VICTIM TO EXIT THE RESIDENCE**

Without citing any authority, defendant claims that Deputy Matthew's (and the defendant's) act of yelling and ordering the female victim to come outside of the defendant's residence amounted to a de facto warrantless search of the house. It is unclear how the the act of requesting someone to do something is tantamount to a search. The fact that the girl came out of the residence of her own volition based on calls to do so made by both Matthews and the defendant does not amount to any search, warrantless or otherwise.

V. **THE SEARCH WARRANT WAS NOT BASED ON GILSTRAP'S ENTRY INTO THE RESIDENCE**

A search warrant was obtained and executed by the Lee County Sheriff's Office on or about October 4, 2010. According to the defendant, because the search warrant is based on evidence illegally seized, the search warrant should be suppressed as fruit of the poisonous tree. The government disagrees. Indeed, in reviewing the search warrant that was issued after Gilstrap's entry into 825 Walker Road, it appears that even if Gilstrap's

entry violated the defendant's Fourth Amendment rights, the independent source exception would still uphold the search warrant that was subsequently issued.

There is no mention within the application for the search warrant for the defendant's residence at 825 Walker Road, Sanford, North Carolina, of Corporal Gilstrap's initial entry into the residence.  See, Defendant's Omnibus Motion, Exhibit A.  None of the probable cause submitted for the search warrant relies upon any of the observations Corporal Gilstrap may have made when he entered into the residence to retrieve the victim's belongings.  Rather, the search warrant application relies on Deputy Matthews's earlier observations and encounter with the defendant and relies upon later statements made by the victim herself.

In Murray v. United States, 487 U.S. 533, 542 (1988), the Supreme Court discussed the independent source exception and held that the exception permits "second-look" warrants when the "later, lawful seizure is genuinely independent of the earlier, tainted one."  Two elements must be satisfied: "(1) the warrant must be supported by probable cause derived from sources independent of the illegal entry; and (2) the decision to seek the warrant may not be prompted by information gleaned from the illegal conduct."  United States v. Johnson, 994 F.2d 980, 987 (2d Cir. 1993).

In this instance, there was no illegal conduct on the part of Corporal Ken Gilstrap's entry into the residence to retrieve the victim's belongings.  Even if there were, the two elements articulated by the Supreme Court in Murray have been satisfied.  The warrant was supported by probable cause independent of Gilstrap's entry and the decision to seek the

warrant was not prompted by information gleaned from the illegal conduct.  See, Johnson, 994 F.2d at 987-988.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's motions to suppress statements he made to Lee County Sheriff's officers, evidence relating to the minor female's presence at defendant's residence, evidence of minor female's luggage at defendant's residence and evidence seized pursuant to search warrants for defendant's residence and computers.

Dated: Rochester, New York
      June 10, 2013

                                    Respectfully submitted,

                                    WILLIAM J. HOCHUL, JR.
                                    United States Attorney

                 By:    s/Tiffany H. Lee
                        TIFFANY H. LEE
                        Assistant United States Attorney
                        United States Attorney's Office
                        500 Federal Building
                        Rochester, NY 14614
                        (585) 263-6760
                        Tiffany.Lee@usdoj.gov

cc. Jeffrey L. Ciccone, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | 11-CR-6051 (DGL) |
| -vs- | **UNITED STATES' POST-HEARING MEMORANDUM OF LAW** |
| WILLIAM H. SCHLIEBENER, JR. | |
| Defendant. | |

## CERTIFICATE OF SERVICE

    I hereby certify that on June 10. 2013, I electronically filed the foregoing with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant(s) on this case:

    Jeffrey L. Ciccone, Esq.

                                                       s/Patricia Reis
                                                       Patricia Reis