**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**



UNITED STATES OF AMERICA,

                                **REPORT AND**
                                **RECOMMENDATION**
                                **11-CR-6051**

v.

**WILLIAM HERBERT SCHLIEBENER, JR.,**

                **Defendant.**

___

### Preliminary Statement

On March 10, 2011, defendant William Herbert Schliebener, Jr. was charged in a two count Indictment, including counts of transportation of a minor, and enticement of a minor. See Indictment (Docket # 1). By text Order of Judge David G. Larimer, dated March 10, 2011, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Docket # 2).

Currently before the Court are the defendant's motion to suppress (1) the statements he made to law enforcement on October 3, 2010 prior to being handcuffed at his 825 Walker Road residence, (2) evidence of the victim's presence and the victim's belongings which were removed from the defendant's 825 Walker Road residence on October 3, 2010, and (3) evidence seized pursuant to search warrants issued for his residence and computer. (Docket # 24). The Government filed papers in opposition to defendant's motion. (Docket # 30). Pre-suppression hearing memoranda were submitted by the Government and defendant. (Docket ## 34, 35). A suppression

hearing was held on March 15, 2013. The defendant and the Government submitted post-suppression hearing supplemental memoranda. (Docket ## 42, 45). The following is my Report and Recommendation as to the defendant's motions.

## Findings of Fact

On October 3, 2010, Deputy Justin Matthews, a law enforcement officer employed with the Lee County Sheriff's Office in Sanford, North Carolina, drove to a residence located at 825 Walker Road in Sanford, North Carolina to investigate the location of a fourteen year old girl who had been reported missing from Canandaigua, New York. See Transcript of March 15, 2013 Suppression Hearing (hereinafter "3/15/13 Tr.") at pp. 5-6. Deputy Matthews had received a request from a detective with the Canandaigua Police Department to investigate whether the missing teenager was currently located at the Walker Road residence. Id. at p. 6. Deputy Matthews had been provided the name of defendant William Schliebener as an individual associated with the 825 Walker Road address. Id. at p. 7.

Deputy Matthews arrived at 825 Walker Road at approximately 6:30 p.m. on October 3, 2010. Upon his arrival, Deputy Matthews parked his patrol car in the driveway and immediately encountered defendant Schliebener on the porch outside the residence, which Matthews described as "a single wide trailer mobile home." Id. at pp. 7-8. Deputy Matthews identified himself to Schliebener and

advised him that he was there to speak with him about locating a missing juvenile. Id. Matthews was dressed in his uniform, which visibly displayed his badge and Sheriff's Department patches. Matthews was also wearing a utility belt which contained a firearm, handcuffs and pepper spray. Id. at pp. 9-10.

Standing outside the trailer home, Matthews asked Schliebener if anyone else was at the residence with him, and Schliebener responded "no." Id. at p. 10. Matthews told Schliebener the identity of the fourteen year old juvenile he was looking for and asked him if he knew her. Id. Schliebener told Matthews that he knew the juvenile and had been contacting her through the computer. Id. Upon hearing this, Matthews again asked Schliebener if the juvenile was in his residence and Schliebener responded "no." Id. Deputy Matthews then asked Schliebener for his consent to search the residence, and Schliebener gave Matthews verbal consent to search the residence. Id. at p. 11. At that point, Matthews called for another Sheriff's Deputy to come to 825 Walker Road to assist him with the search. Id. at p. 11.

After calling for assistance, Deputy Matthews advised Schliebener that he was "not there by mistake" and that he had been sent to the Walker Road residence by the Canandaigua Police Department in an attempt to locate the missing juvenile. Id. Upon hearing this, Schliebener dropped his head in his hands and asked Deputy Matthews how much trouble he would be in if the juvenile was

3

in fact at his residence. Id. at p. 12. Matthews told him that he did not know how much trouble he would be in. Id. Schliebener then told Matthews that the juvenile was inside the residence. Id. at pp. 12, 24. After hearing that the juvenile was actually in the residence, Deputy Matthews placed handcuffs on Schliebener and advised him that he was detained until Matthews could complete his investigation. Id. at p. 12. Although handcuffed, Schliebener sat on the steps of the front porch with Deputy Matthews.

Schliebener then began to call out the juvenile's name and told her to come outside. Id. Matthews also starting calling for the juvenile to come outside. See id. at p. 26. After both Matthews and Schliebener called the juvenile's name several times, the juvenile came out of the residence onto the porch. Id. at pp. 12, 26. Matthews described the juvenile as "irate" and "upset" when she came out onto the porch. Matthews "put her in handcuffs and secured her in my patrol car" for safety reasons. Id. Deputy Matthews's interaction with Schliebener on the front steps of his porch that evening lasted only "a few minutes." Id. at p. 13.

Deputy Matthews did not enter and search the residence prior to securing the juvenile in his patrol car. Instead, Matthews waited for back up police to arrive and, while waiting for back up, contacted the Sheriff Department's on-call detective and advised him that he had located the missing juvenile. See id. at p. 15. The on-call detective told Matthews that he would be en route to

the residence and that Matthews should remain there until the detective arrived. See id. Matthews also contacted the Canandaigua Police Department to inform them that the missing juvenile had been located and was safe. Id. Matthews did not have any further conversations with defendant Schliebener regarding the missing juvenile or the investigation. Id. Within only "a couple of minutes" of calling for back up, Corporal Kenneth Gilstrap of the Lee County Sheriff's Office arrived at the scene in his patrol car to provide back up assistance to Matthews. Id. at pp. 15, 26. Corporal Gilstrap was wearing his police uniform, which included black boots, a gray polo shirt with the Lee County badge embroidered on it, and a utility belt which contained pepper spray, a holstered firearm, a radio, handcuffs and a Taser. Id. at pp. 36-37.

Upon arrival, Corporal Gilstrap first spoke with Deputy Matthews to find out what was going on, and then he spoke with the juvenile while she was seated in the front seat of Deputy Matthews's police car. Gilstrap asked her how she got from New York to North Carolina and whether she had any belongings inside defendant's residence. See id. at pp. 38, 44. The juvenile told Gilstrap that she did have personal belongings inside the residence, and that she did not know exactly where they were but she could show him where they were. Id. at p. 39.

Gilstrap and the female victim then walked up to the front of

defendant's residence, where the defendant was still handcuffed on the front deck. Id. Corporal Gilstrap asked Schliebener if he and the juvenile could enter Schliebener's residence to retrieve her personal belongings, and Schliebener "stated that we could." Id.

Corporal Gilstrap and the juvenile proceeded to enter Schliebener's residence. Id. at p. 40. Gilstrap testified that he and the juvenile "went down the hall to the right to a bedroom and retrieved - I believe she had two suitcases, a backpack and some clothing on the floor, gathered up her belongings and exited the residence." Id. Gilstrap and the juvenile were inside the residence for "no more than five minutes." Id. at p. 41. Gilstrap did not search or seize any other items or belongings other than the victim's personal belongings while inside the residence. Id. Gilstrap did not take any notes of anything he observed while inside the residence. Id. Gilstrap did not at any time conduct a further search of the residence based on the consent that Schliebener had given him to enter the residence to gather the juvenile's belongings. Id. Upon exiting the residence, Gilstrap brought the juvenile and her belongings back to the patrol cars. He placed the juvenile's belongings in his patrol car, and he put the juvenile back in Deputy Matthews's patrol car. Corporal Gilstrap then carried on a conversation with the juvenile while waiting for the detectives and other police officers to arrive. Id.

Once the detectives and other police officers arrived, Corporal Gilstrap drove back to the Sheriff's Office with the victim's belongings, and Deputy Matthews transported the female victim to the Sheriff's Office in his patrol car. Id. at pp. 15, 42. This was Gilstrap and Matthews's last involvement with the matter, as the case was turned over to the Sheriff Department's detective. See id. at p. 16. During his time at Schliebener's residence, Matthews "never stepped foot" inside the residence. Id. at p. 19. Neither Matthews nor Gilstrap ever read defendant Schliebener his Miranda rights at any time during their encounter with Schliebener at his residence on October 3, 2010. Id. at pp. 27, 46.

**Discussion**

Schliebener seeks to suppress (1) the statements he made to law enforcement on October 3, 2010 prior to being handcuffed at his 825 Walker Road residence, (2) evidence of the victim's presence and the victim's belongings which were removed from the defendant's 825 Walker Road residence on October 3, 2010, and (3) evidence seized pursuant to search warrants issued for his residence and computer.

1. Motion to Suppress Statements: Law enforcement officers are required to give Miranda warnings before questioning a person who has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384

U.S. 436, 444 (1966). The admissibility of the statements Schliebener made to Deputy Matthews on October 3, 2010 prior to being handcuffed depends on whether Schliebener's right to <u>Miranda</u> warnings had attached.[1] Schliebener claims that he was "in custody" at the time he made statements to Matthews on October 3, 2010 outside his 825 Walker Road residence.

"Decisions in this circuit have emphasized that in the absence of actual arrest, an interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave." <u>United States v. Mitchell</u>, 966 F.2d 92, 98 (2d Cir. 1992). Thus, even in the absence of an actual arrest, an individual shall be deemed to be in custody when "law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave." <u>United States v. Kirsh</u>, 54 F.3d 1062, 1067 (2d Cir. 1995)(citations omitted), *cert. denied*, 516 U.S. 927 (1995); <u>see</u> <u>United States v. Hall</u>, 421 F.2d 540, 545 (2d Cir. 1969)("[I]n the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so."). The test for custody is an

---

[1] The question of "custody" is the disputed issue here. The Government does not contest that if the interview of Schliebener was custodial, interrogation occurred and incriminating information was obtained. There is also no dispute that the incriminating statements were made without the benefit of <u>Miranda</u> warnings.

8

objective one based on the totality of circumstances surrounding the particular encounter at issue. See Stansbury v. California, 511 U.S. 318, 323 (1994). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). In United States v. Newton, 369 F.3d 659 (2d Cir. 2004), the Second Circuit adopted a two part analysis: (1) the court must first determine "whether a reasonable person would have thought he was free to leave," (id. at 672); and, if not, (2) "whether his freedom of action has been curtailed to a degree associated with formal arrest" (id. at 671 (citations and internal quotations omitted)).

After careful review of the totality of the circumstances surrounding the events of October 3, 2010, and after consideration of the various indicia of "custody," I find that Schliebener was not in custody at the time of the questioning at issue here. The hearing testimony demonstrates the interaction between Schliebener and Matthews was consistent with a consensual encounter and not custodial interrogation. It began with Deputy Matthews, who was in uniform, identifying himself as a law enforcement officer and asking for assistance in locating a missing juvenile. Schliebener initially denied any knowledge of the missing juvenile. However, after Matthews asked Schliebener for consent to search the residence and told him that his presence at Schliebener's home was not by accident, Schliebener bowed his head and asked "how much

trouble" he would be in if the juvenile was in the residence. The brief encounter at issue here occurred at Schliebener's home and not in the more coercive environment of a police station. See United States v. Mitchell, 966 F.2d at 99 (finding of custody less likely where an interview "occurred in the familiar surroundings of [the defendant's] home"). Schliebener was never advised he was under arrest. No weapons were drawn, no show of force was exhibited, no coercion, aggression or threats of prosecution were ever made by Deputy Matthews. Voices were not raised and Schliebener remained calm and cooperative and even sought Matthews advice on "how much trouble he would be in." Schliebener was never frisked or patted down. In sum, based on the totality of circumstances, I find a reasonable person in Schliebener's position would have felt free to terminate the interview and ask Deputy Matthews to leave. See Yarborough v. Alvarado, 541 U.S. 652, 662 (2004)("[C]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances."). Accordingly, because the first requirement for custody under Newton has not been satisfied, the Court need not go further. United States v. Newton, 369 F.3d at 672 (if the court answers the "free to leave" inquiry in the affirmative, "the Miranda inquiry is at an end; the challenged interrogation did not require advice of rights"). This Court recommends that defendant's motion to suppress statements be **denied.**

2. <u>Motion to Suppress Evidence</u>: Schliebener seeks to suppress any evidence relating to (1) the juvenile's presence in the residence, and (2) the juvenile's luggage and belongings which were retrieved by the juvenile and Corporal Gilstrap from the residence.

<u>Presence of the Juvenile</u>: Schliebener's argument that Deputy Matthews's "act of yelling and ordering the girl to come outside amounted to a *de facto* warrantless search of the house" lacks both factual and legal merit. Factually, the evidence presented at the hearing does not support Schliebener's claim. The only witness who testified at the hearing on this issue was Deputy Matthews and his testimony simply does not support Schliebener's claims of what happened. See 3/15/13 Tr. at pp. 12, 26. Matthews testified that after Schliebener told him that the missing juvenile was in the house, <u>both</u> of them began to "yell her name to come out of the house." Id. at 26. Thus, Schliebener is now moving to suppress the presence of a person whose location he voluntarily disclosed to law enforcement and then actively encouraged to reveal herself.

As to the legal basis for Schliebener's argument, he does not cite to a single case where the calling out of the name of a person to reveal themselves constitutes a search, *de facto* or otherwise. As a practical matter, to adopt Schliebener's view would be tantamount to requiring police to obtain a search warrant before employing the conventional strategy (depicted all too often in movies and on televison) of surrounding a residence and yelling

11

loudly to potential occupants: "We know you are in there. Come out with your hands up!" This Court declines to push Fourth Amendment jurisprudence in the direction urged by Schliebener and hence recommends that this aspect of the defendant's suppression motion be **denied**.

Retrieving the Juvenile's Luggage and Belongings: Schliebener moves to suppress evidence of the juvenile's luggage and other personal belongings that were retrieved from his residence on October 3, 2010. The consent at issue is Schliebener's verbal statement to Corporal Gilstrap granting Gilstrap permission to "go inside the residence to retrieve the victim's belongings." See 3/15/13 Tr. at p. 39. According to Schliebener his consent was not voluntary because he "was not aware of the fact that the officers were actually gathering evidence to be used against him." See Defendant's Supplemental Memorandum of Law (Docket # 42) at p. 12.

It is well settled that unless a carefully defined exception clearly applies, a warrantless search is "per se unreasonable." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)(quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One recognized exception to the warrant requirement is a search that is conducted pursuant to consent. Schneckloth, 412 U.S. at 219. "So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." United states v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995). The prosecution bears the burden of

proving that consent was voluntarily given. <u>Schneckloth</u>, 412 U.S. at 222. While the government's burden is not satisfied by showing a mere submission to a claim of lawful authority, <u>Florida v. Royer</u>, 460 U.S. 491, 497 (1983), consent need not be expressed in a particular form but can be found from an individual's words, actions or conduct. <u>United States v. Duetsch</u>, 987 F.2d 878, 883 (2d Cir. 1993)(internal quotations and citations omitted). In determining whether or not consent to a search was freely given, the Court must look at the totality of the circumstances surrounding the obtaining of the consent. <u>Schneckloth</u>, 412 U.S. at 227. While knowledge of the right to refuse consent is a relevant factor, such knowledge is not a requirement of proving a valid consent. <u>Id.</u> at 235-46. The ultimate issue of whether the consent was in fact voluntary is "to be determined from the totality of all the circumstances." <u>Id.</u> at 223.

Based on the evidence adduced at the hearing, I find that Corporal Gilstrap had a reasonable belief that Schliebener's consent to search was freely and voluntarily given, and therefore valid. Although Schliebener had been handcuffed at the time he gave consent to search, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." <u>United States v. Watson</u>, 423 U.S. 411, 424 (1976); <u>see</u> <u>United States v. Crespo</u>, 834 F.2d 267, 271 (2d Cir. 1987)("That [defendant] was under arrest and in custody, or even handcuffed,

does not as a matter of law require a finding of coercion."). Here, there is no evidence to indicate that Corporal Gilstrap intimated, threatened, deceived, made promises or otherwise coerced Schliebener's consent. To the contrary, the evidence presented at the hearing supports a finding that Schliebener was well aware that the juvenile would not be allowed to remain at his residence and needed to retrieve her personal property. Corporal Gilstrap's testimony that (i) he asked Schliebener for permission to enter his residence merely to retrieve the victim's personal belongings, (ii) he did not search or seize any other items or belongings other than the victim's personal belongings while inside defendant's residence, (iii) Gilstrap was inside Schliebener's residence for "no more than five minutes," (iv) he did not take any notes of anything he observed while inside the residence, and (v) did not at any time conduct a further search of the residence based on the Schliebener's consent to enter the residence to gather the juvenile's belongings was entirely credible. See 3/15/13 Tr. at pp. 39-41. Corporal Gilstrap did not conduct a full search of defendant's residence; rather, he accompanied the victim inside the defendant's residence in order to assist her in retrieving her personal belongings. His search was limited to its stated purpose and was well within the scope of the consent given by Schliebener. See Florida v. Jimeno, 500 U.S. 248, 251 (1991)("The scope of a search is generally defined by its expressed object."). The fact

that Schliebener did not realize that the Government could use the items Gilstrap removed from the residence at trial does not operate to vitiate the defendant's consent. Accordingly, it is my Report and Recommendation that the defendant's motion to suppress the juvenile's personal belongings retrieved from 825 Walker Road on October 3, 2010 be **denied**.

3. Motion to Suppress Evidence Seized pursuant to Search Warrants: Schliebener seeks to suppress all evidence seized pursuant to search warrants for Schliebener's home and computer. Schliebener does not dispute that there was probable cause for issuance of the search warrants, but rather argues that the "affidavits submitted in support of the search warrants . . . relied upon evidence that was unlawfully seized." See Defendant's Supplemental Memorandum of Law (Docket # 42) at p. 13. Thus, Schliebener argues the evidence seized pursuant to the two search warrants "must be suppressed as the fruit of the poisonous tree" pursuant to Wong Sun v. United States, 371 U.S. 471 (1963). See Defendant's Supplemental Memorandum of Law (Docket # 42) at p. 13.

Because I have found that the conduct of law enforcement was proper and constitutional, the evidence set forth in the search warrant applications was not tainted. Accordingly, it is my Report and Recommendation that Schliebener's motion to suppress the evidence seized pursuant to search warrants for his residence and his computer be **denied**.

15

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motions (Docket # 24) to suppress statements he made to law enforcement prior to being handcuffed on October 3, 2010 be **denied**, to suppress evidence of the victim's presence at the defendant's 825 Walker Road residence on October 3, 2010 be **denied**, to suppress evidence of the victim's belongings which were removed from the defendant's 825 Walker Road residence on October 3, 2010 be **denied**, and to suppress evidence seized pursuant to search warrants issued for his residence and computer be **denied**. **SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: July 22, 2013
Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: July 22, 2013
Rochester, New York

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).