<pre>
 1                    UNITED STATES DISTRICT COURT

 2                    WESTERN DISTRICT OF NEW YORK

 3

 4

 5   - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA              11-CR-6051(G)
 6
     vs.
 7                                         Rochester, New York
     WILLIAM H. SCHLIEBENER, JR.,          November 18, 2014
 8              Defendant.                 4:02 p.m.
     - - - - - - - - - - - - - -X
 9

10                    TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE FRANK P. GERACI, JR.
                    UNITED STATES DISTRICT JUDGE
12

13

14                  WILLIAM J. HOCHUL, JR., ESQ.
                    United States Attorney
15                  BY: JOHN J. FIELD, ESQ.
                    Assistant United States Attorney
16                  6200 Federal Building
                    Rochester, New York 14614
17
                    MARIANNE MARIANO, ESQ.
18                  Federal Public Defender
                    BY: JEFFREY CICCONE, ESQ.
19                  Assistant Federal Public Defender
                    28 East Main Street, Suite 400
20                  Rochester, New York 14614
                    Appearing on behalf of the Defendant
21

22   ALSO PRESENT:      David Spogen, U.S. Probation Office

23
     COURT REPORTER:    Christi A. Macri, FAPR, RMR, CRR, CRI
24                      Kenneth B. Keating Federal Building
                        100 State Street, Room 2120
25                      Rochester, New York 14614
</pre>

## **P R O C E E D I N G S**

\*　　　　\*　　　　\*

(**WHEREUPON**, the defendant is present).

**THE COURT:** Are you William Schliebener?

04:17:07PM **THE DEFENDANT:** Yes, sir.

**THE COURT:** Mr. Ciccone appears on behalf of Mr. Schliebener.

Mr. Field on behalf of the Government.

**MR. FIELD:** Good afternoon, Your Honor.

04:17:15PM **THE COURT:** Matter's on for sentencing.  The Court has had the presentence report, which I've reviewed.

I also have a statement from the Government regarding sentencing factors, which I've also reviewed.

In addition, I have a statement or objections to 04:17:33PM the presentence report and defendant's sentencing statement filed by Mr. Ciccone.

And subsequent to that he also filed another document dated November 10th regarding the lab reports from North Carolina.

04:17:51PM Two major issues that I see.  One is an issue that was reserved as part of the plea agreement in that the defense alleges that there's not sufficient proof to show that Mr. Schliebener had sexual contact.  Consequently, the assessment of points for sexual contact should not be 04:18:17PM assessed.

                    And, secondly, and probably just as critical, is

the calculations of the guidelines.   The plea agreement by

the Government and the defense utilized multiple guideline

manuals in the calculations of the guidelines pursuant to the

04:18:36PM plea agreement.

                    The Probation Department utilized the 2013

guideline to determine the potential sentence under the

guidelines and, Mr. Ciccone, it's my understanding you feel

that that's improper.

04:18:54PM          Did you want to articulate that any further?

          **MR. CICCONE:** Judge, for the most part I outlined my

arguments in our submissions, but essentially the point is

that it is a violation of Mr. Schliebener's rights under the

*ex post facto* clause in that the PSR is applying an

04:19:13PM enhancement to Counts 2, 3 and 4, it's the same enhancement,

but it's an enhancement that did not exist at the time that

the crime was committed.

                    Based on that, it's a violation of his

constitutional rights and I would argue that it should not be

04:19:29PM applied under -- the older guideline manual should be used as

to Counts 2, 3 and 4.

          **THE COURT:** Okay.  And how do you differentiate the

ruling in *Kumar*, K-U-M-A-R?

          **MR. CICCONE:** Sure.   Essentially two different

04:19:41PM arguments, Judge.   One is there's actually a split of

1  authority among the different circuits, I mean, I realize

2  we're within the Second Circuit, but not all courts have found

3  that the so-called "one book rule," which is what *Kumar* relies

4  on is appropriate and not a violation of the *ex post facto*

04:19:57PM 5  clause.   So my argument would be that the other circuits are

6  the ones that got it right, it is a violation of

7  *ex post facto*.

8         But even if Your Honor were inclined or felt

9  compelled to follow the Second Circuit authority, I would

04:20:10PM 10  argue that this case is different from *Kumar* in that we're not

11  dealing with the issue of notice, which is what was so

12  important in *Kumar*.

13         Second Circuit said that in that case the

14  defendants were on notice that the older crime was going to be

04:20:25PM 15  subjected to a harsher penalty because this one book rule had

16  been passed in-between the defendant's older crime and the

17  newer crime, so when they committed that newer crime, they

18  were on notice of the harsher penalties.

19         That's not the case here because the older crime

04:20:43PM 20  was committed in North Carolina.   The newer crime here in New

21  York State, there is no venue for the older crimes here.

22         So it could not be that Mr. Schliebener knew if I

23  commit this newer crime in the Western District of New York,

24  I'm going to be subjected to harsher penalties based on the

04:21:02PM 25  older crimes down in North Carolina.   Because they just

1    couldn't have been brought here but for the venue waiver,

2    which was done as part of the plea agreement, and that plea

3    agreement was the agreement that used the older guidelines.

4        **THE COURT:** Mr. Field, do you want to be heard on

04:21:17PM 5    that?

6        **MR. FIELD:** Not particularly, Your Honor.   The

7    *Lawlor* case, I mean, the Government has agreed the guidelines

8    range that it agreed to in the plea agreement.  We're not

9    advocating that a higher or different guideline should apply.

04:21:30PM 10        I would note, however, that in the plea agreement

11   in terms of notice to the defendant, it did put him on notice

12   that the maximum penalty was up to life imprisonment, I

13   believe, or in the -- not the plea agreement, or was there a

14   plea agreement?

04:21:46PM 15        **MR. CICCONE:** There was a plea agreement.

16        **MR. FIELD:** That put him on notice of that as being

17   the potential maximum penalty that might apply in this case.

18        **MR. CICCONE:** And, Judge, I'm not arguing that to

19   the contrary of the notice of the maximum penalties.

04:22:00PM 20   Obviously, every plea agreement says that the defendant is

21   subject to the maximum penalties under the law.

22        However, the plea agreement did not waive

23   Mr. Schliebener's rights under *ex post facto* and that's

24   essentially my argument.

04:22:13PM 25        **THE COURT:** Okay, thank you.

1          Pursuant to *United States vs. Kumar*, K-U-M-A-R, 617

2    F.3d 612, 2010 Second Circuit decision, the Second Circuit

3    ruled that the one book rule does not violate the

4    *ex post facto* clause, specifically utilizing a sentencing

5    manual to apply to a series of charges as in this case, it is

6    not a violation of *ex post facto* law.

7          It indicates that when sentencing of offenses

8    committed both before and after the publication of a revised

9    version of the guidelines, that is not a violation and

10   pursuant to Section 1B1.11, the applicable guideline range is

11   the manual in effect at the time or the last offense of

12   conviction, when that was completed, and the manual in effect

13   at the time of the sentencing.

14         The case talked and compared this to the three

15   strikes legislation, which obviously enhances penalties for

16   prior conduct when an individual's been previously convicted

17   of, for instance, two felonies and ruled that that is not a

18   constitutional violation.

19         It also has language in there indicating that it's

20   not the amendments to the sentencing guidelines that

21   disadvantaged the defendant; it's clearly disadvantaged by

22   increasing the enhanced penalties here.

23         However, it's his election to continue his criminal

24   activity, and the Court finds that there was sufficient notice

25   in this case to allow for the calculation of guidelines to be

1 determined by the 2013 manual.

2          So that objection is overruled at this time.

3          Now, regarding the sexual contact, do you want to

4 be heard on that?

04:24:14PM 5          **MR. CICCONE:** Judge, my argument on that is pretty

6 straightforward.  There is contradictory evidence.  There's

7 a statement by so-called Minor Victim No. 1 that was made to

8 the police down in North Carolina; and there's also the lab

9 report contradicting her statement or at the very least not

04:24:33PM 10 confirming it.

11          It's the Government's burden to prove beyond a

12 preponderance of the evidence any enhancement or any disputed

13 enhancement under the guidelines, and there has been nothing

14 presented which would tip the scale one way or the other.

04:24:49PM 15          So based on that, I think the Court has to find

16 that they have not met their burden as to that enhancement.

17          **THE COURT:** Okay.  Regarding this particular issue,

18 there was a reservation in the plea agreement for the defense

19 to argue that there was not sexual contact and their different

04:25:06PM 20 calculations was based upon that.  The Government reserved

21 their right to argue that there was sexual contact.

22          **MR. FIELD:** That's correct.

23          **THE COURT:** Do you want to be heard on that?

24          **MR. FIELD:** I do, Judge, on this point I would like

04:25:15PM 25 to be heard.  And I guess I take a slightly different tact

1 than Mr. Ciccone has in assessing the evidence that the

2 Government has marshaled in support of its position.

3 First, I would note for the Court that in Counts 2

4 through 4 he admitted to having had sexual contact with

04:25:31PM 5 children. And under the Federal Rules of Evidence, that is

6 admissible for propensity to show similar conduct on future

7 occasions.

8 So there is no forbidden propensity bar in this

9 particular circumstance, and we would argue that the Court

04:25:45PM 10 draw that inference.

11 Second, the defendant stated that he was planning

12 to have sex with her as he drove from North Carolina to New

13 York to get her. I think that's a very significant fact as

14 well. That corroborates the victim's statement that, in

04:25:59PM 15 fact, they did have sex because the guy drove from

16 North Carolina to New York for the purpose, his stated purpose

17 of having sex with her.

18 Finally, I would note that according to the victim,

19 she had sex on two occasions with the defendant, both times on

04:26:14PM 20 October 2nd. She wasn't found until October 3rd.

21 And the rape kit test was performed on October 3rd.

22 For some reason it wasn't evaluated until almost a year later

23 on August 15th, 2011, and the travel dates were October 3rd,

24 2001 (sic) or late -- late at night or early in the morning on

04:26:36PM 25 October 2nd, 2010 is when they left New York, and the evening

1    of October 3rd is when she was found in North Carolina.

2            The victim stated that the defendant had sex with

3    her en route back from New York to North Carolina.   He wore a

4    condom.   She took a shower and discarded the clothes that she

04:26:54PM 5    was wearing at the time.   That would explain, in the

6    Government's view, the finding of no semen or spermatozoa in

7    the rape kit.

8            I think that when you consider all the evidence, I

9    think the defense falsely portrays it as a -- their

04:27:09PM 10    interpretation of the rape kit versus the defendant's

11    statement.

12            I think that there's much more than the defendant's

13    naked statement in support of the Government's position that

14    there was sexual contact between the defendant and the victim.

04:27:22PM 15            **THE COURT:** Thank you.

16            **MR. CICCONE:** Your Honor, if I could just respond?

17            **THE COURT:** Sure.

18            **MR. CICCONE:**  First of all, there has been no

19    evidence, no expert testimony or anything for you to draw the

04:27:29PM 20    conclusions that Mr. Field is arguing.   We don't know whether

21    or not a rape kit should show a positive result three days

22    later vs. 100 days later.

23            I mean, maybe a scientist could tell us that, but

24    we don't have that.   You can't argue propensity and just lack

04:27:48PM 25    of other evidence because it's the Government's burden to

1  prove that the enhancement was met as to Count 1.   I'm not

2  arguing as to Counts 2, 3 and 4.   I mean, that's a separate

3  argument, which you've already ruled on.

4  But as to Count 1, even if you say that there was a

04:28:03PM 5  propensity as to crimes committed years earlier, the

6  Government still has to prove and it has to meet their burden

7  as to the application of this enhancement as to this count.

8  And we don't have any actual evidence offered other

9  than some statements that were made, and then we have the lab

04:28:22PM 10  report which does not confirm and is not consistent with her

11  statements.

12  **MR. FIELD:** The Government's position is that the

13  lab report doesn't contradict her statements because it's

14  insufficient, Your Honor.

04:28:32PM 15  **MR. CICCONE:** But it doesn't support anything,

16  though.

17  **THE COURT:** Well, that's not unusual.

18  **MR. CICCONE:** It's not, Judge.   And if somebody

19  were to come forward and say here's why the rape kit could be

04:28:44PM 20  negative for absolutely everything, but it could have still

21  happened, then that would be one thing.   Then you would have a

22  basis to say okay, this is why I'm going with this evidence

23  over the other.   But it's more than just oh, it didn't show

24  the evidence.   You know, this victim says that they performed

04:29:00PM 25  sex in multiple different ways and the rape kit is negative

1  for every one of those.

2        **THE COURT:** The way I read it, the rape kit is only

3  talking about the absence of the presence of semen.

4        **MR. CICCONE:** I think it also said there was the

04:29:13PM 5  absence of saliva, which she says there was oral sex and

6  sexual intercourse, and it's negative for both.

7        **THE COURT:** You're correct.  It does say negative

8  for the presence of saliva as well, but neither one of those

9  would negate an act of either intercourse or the act of oral

04:29:35PM 10  sex as well.

11        **MR. CICCONE:** I'm sorry?

12        **THE COURT:** Either act, either sexual intercourse or

13  deviant sexual intercourse.

14        **MR. CICCONE:** Right.  I mean, Judge, there's any

04:29:44PM 15  number of things that could have happened.  I mean, all we

16  know is that the scientific evidence that we have doesn't

17  confirm anything.

18        **THE COURT:** Anything further on that?

19        **MR. CICCONE:** I mean, no, Judge.  I mean, I would

04:29:57PM 20  just remind the Court that it's not my burden to disprove

21  anything.  It's the Government's burden and they haven't met

22  it.

23        **THE COURT:** Well, they have to prove by a

24  preponderance of the evidence.

04:30:06PM 25        **MR. CICCONE:** Agreed.

1          **THE COURT:** Correct?

2          **MR. CICCONE:** Yes.

3          **THE COURT:** The issue regarding sexual contact, the

4     Government does have the burden to prove that there was sexual

04:30:13PM 5     contact with the victims by a preponderance of the evidence.

6               In this case there is attached statements by the

7     victim regarding having sexual contact with the defendant both

8     on the way between Canandaigua and North Carolina; and also

9     then, once again, in North Carolina.

04:30:35PM 10          The statement was immediately provided to police in

11    North Carolina upon the arrest of Mr. Schliebener.

12               In addition to that, there were text messages from

13    Mr. Schliebener that were very telling, indicating that he was

14    on his way from North Carolina, that it would take some 12

04:30:59PM 15    hours to arrive at that location, indicated that he talked

16    about getting bored regarding such a long drive.

17               And he responded:  And if you get bored undress.

18               She wrote:  LOL okay.

19               He then wrote:  We might have sex a few times

04:31:19PM 20    before I get home.

21               Victim wrote:  Okay LOL.

22               The defendant wrote:  But remember to pack your

23    camera and everything about me.

24               Victim wrote:  Okay.

04:31:33PM 25          Victim at a later time wrote:  I'm packing.

1          And he wrote:  Oh, you know this is the last time

2    you pack there.

3              Victim:  LOL.   Do you have condoms with you LOL.

4              The defendant:  Yes, I do.

04:31:51PM 5              Victim:  LOL okay.

6              And the defendant:  You think of the condoms.

7          In addition to that, the Court can look at the

8    conduct regarding the other individuals in Counts 2, 3 and 4

9    involving photographs and production of video depictions of

04:32:12PM 10   him having sexual intercourse with his 13-year-old daughter

11   regarding one count.

12          Regarding the second act of sexual contact with his

13   4-to-6-year-old grandniece, and which I believe he had contact

14   with her vaginal area with his penis.

04:32:34PM 15          And then sexual contact with a 3-to-5-year-old

16   child that his wife was baby-sitting that included digital

17   penetration by the defendant.

18          In addition to that, the victim upon arriving back

19   to this area was interviewed and made contact with the Bivona

04:32:53PM 20   Advocacy Center and did make statements to that -- to those

21   individuals as well.

22          The lab report that was provided did indicate the

23   absence of semen and the absence of saliva.  The Court does

24   not find that dispositive for the fact of whether or not there

04:33:14PM 25   was sexual contact between the defendant and the victim

1   relating to Count 1.

2           The Court finds based upon all that that there is

3   sufficient evidence by a preponderance of the evidence to show

4   there was sexual contact between the victim relating to

04:33:29PM 5   Count 1 and the defendant.

6           So that objection is also overruled.

7           I don't think there are any other objections; is

8   that right?

9           **MR. CICCONE:** No, Judge.

04:33:44PM 10          **THE COURT:** Okay.   Mr. Field, do you want to be

11  heard?

12          **MR. FIELD:** Not -- just briefly, Your Honor.   You

13  know, the Government's going to advocate for the maximum

14  possible sentence pursuant to the plea agreement of 210

04:33:59PM 15  months.   That's appropriate in this case.   The defendant is

16  dangerous.   He's a sexual predator.   He's repeatedly shown

17  his inclination and willingness to engage in those acts.

18          I think he's got to be locked up for a long time,

19  Judge, and then he's got to be placed on supervised release

04:34:13PM 20  for the rest of his life to protect society, protect other

21  children out there.

22          **THE COURT:** Thank you.   Mr. Ciccone?

23          **MR. CICCONE:** Judge, I will rely on what's already

24  in my written submissions and attached a letter from

04:34:29PM 25  Mr. Schliebener.   Without, I guess, waiving my objections,

1  which I know you've already ruled on, but the guidelines under

2  your calculation would then be -- I think 168 to 210 would be

3  what's in the plea agreement.

4          So I would ask that you impose a sentence of 168.

04:34:50PM 5          THE COURT: Well, the Court's not bound by the plea

6  agreement.

7          MR. CICCONE: I know that, I understand, but I'm

8  saying based on what the plea agreement was and your ruling on

9  the objection I was allowed to make under the plea agreement,

04:35:02PM 10  those would be the numbers.

11          THE COURT: And certainly your objections are noted

12  and preserved for the record.

13          MR. CICCONE: Thank you, Judge.

14          THE COURT: Anything else?

04:35:12PM 15          MR. CICCONE: No, Judge.  Thank you.

16          THE COURT: Mr. Schliebener, do you want to say

17  anything?

18          THE DEFENDANT: No.

19          THE COURT: You don't want to say anything at all?

04:35:24PM 20          THE DEFENDANT: I don't know what to say, sir.

21          THE COURT: Okay.  I do have the letter that you

22  sent to the Court.  As I indicated, your attorney did file a

23  variety of objections and a statement on your behalf and he

24  included in that the letter that you sent to the Court as

04:35:42PM 25  well.

1          First of all, regarding the calculation of the

2     guidelines, the Court finds that regarding Count 1, that the

3     base offense level is 28.

4          That there should be a two level increase for undue

04:36:01PM 5     influence of a minor.

6          A two level increase for the use of a computer.

7          And the two level increase for the commission of a

8     sex act, which is we just discussed.  Obviously, your attorney

9     had challenged that particular calculation by the Court,

04:36:21PM 10     resulting in a total offense level of 34 for Count 1.

11          For Count 2 a base offense level of 32, a two level

12     enhancement for the age of the victim being between the ages

13     of 12 and 16.   In this case it involved a depiction of

14     photographs of the defendant having sexual intercourse with

04:36:49PM 15     his 13-year-old daughter.

16          A two level increase for the victim being a

17     relative to the defendant.

18          And a two level increase based upon sexual contact,

19     for a resulting offense level of 38 for Count 2.

04:37:09PM 20          For Count 3 the base level being 32.

21          A four level increase based upon the victim being

22     between the ages of 4 and 6 years old.   This involved sexual

23     contact with the grandniece.   It involved the defendant

24     having contact between his penis and the vaginal area of that

04:37:30PM 25     grandniece, and also having her hold his penis in her hand

1  near her mouth.

2          It would be a two level increase for victim being a

3  relative to the defendant.

4          And a two level increase based upon sexual contact

04:37:49PM 5  for a total offense level of 40 regarding that particular

6  count.

7          Regarding Count 4, base offense level of 32.

8          With a four level increase based upon in that count

9  involving the depiction of a child between the ages of 3 and 5

04:38:10PM 10  years old.  This involved a child who was being babysat by

11  his wife with the depiction being the defendant digitally

12  penetrating the child in that particular depiction.

13          A two level increase based upon a minor being in

14  the custody or care or control of the defendant as stated. At

04:38:34PM 15  that time the defendant's wife was baby-sitting that

16  particular child.

17          And also a two level increase based upon sexual

18  contact, for a level of 40 relating to Count 4.

19          Based upon Count 1 being a level 34, Count 2 a

04:38:56PM 20  level 38, Count 3 being a level 40 and Count 4 being a level

21  40, there's a four level increase based upon the fact there

22  are 3.5 units for a multi-count adjustment, resulting in a

23  total offense level of 44.

24          The defendant does receive a three level downward

04:39:18PM 25  adjustment for acceptance of responsibility, ultimately

1    resulting in a total offense level of 41 in this case.

2           Regarding that -- so many notes in this matter.

3    The defendant's criminal history category is a level I since

4    he has no prior criminal history.

04:39:47PM 5           The guideline range, his sentence would be 324

6    months to 405 months, with a 15 year period of supervised

7    release under the guidelines, the fine range would be between

8    $25,000 and $250,000, and a $100 special assessment on each

9    count for a total of $400.

04:40:16PM 10          Now, Mr. Schliebener, the Court has to decide what

11   to sentence you to.   That's the guideline range in this case

12   is 424 (sic) months to 405 months under the -- under the

13   determination of the Court and the guidelines.

14           **MR. CICCONE:** 324, Judge.

04:40:34PM 15          **THE COURT:** What did I say?

16           **MR. CICCONE:** I think you said 424.

17           **THE COURT:** 324 to 405.   I had to look at a number

18   of different factors here.   This is a very disturbing case.

19   This is a matter where you've been engaging in this type of

04:40:48PM 20  conduct for a long period of time, over a decade, resulting in

21   your having such incredible sexual urges that you drove 12

22   hours to drive from North Carolina to Canandaigua to pick up

23   this young girl, 14-year-old, to take her back to

24   North Carolina; and as the Court found, engaged in sexual

04:41:14PM 25  contact with her on at least two separate occasions.

1        In addition, over that 10 year period of time you

2   were involved with the production of images of contact with

3   children that included acts of bondage, torture, humiliation,

4   bestiality, including sexual contact with your

04:41:42PM  5   13-year-old daughter, including sexual intercourse and

6   fellatio with your 13-year-old daughter.

7        Images of contact with a grandniece who was aged

8   between 4 and 6 years old that involved contact with your

9   penis and her vaginal area.

04:41:59PM  10   And also images of her holding your penis near her

11   mouth; images of sexual contact with a 3-to-5-year-old child

12   that was entrusted to the care of your wife who was

13   baby-sitting that child, and images of you digitally

14   penetrating that young child.

04:42:22PM  15   All just -- there's really no words to describe it

16   except despicable acts and conduct over a long period of time.

17   It just appears that you are absolutely unable to control your

18   conduct.

19        The fact that you would drive 12 hours to pick up a

04:42:39PM  20   stranger, 14-year-old, several states away to engage her in

21   sexual contact shows that you're a very, very dangerous

22   person.

23        The reason I asked you about your statement is your

24   statement indicates you're totally clueless.   There's nothing

04:42:58PM  25   in here -- you say "what I've done is wrong," but it doesn't

1 really have any ring of truth to it whatsoever.

2        You ask to be released, indicating you're a

3 workaholic.   That you should receive and asked for a

4 probation sentence.

04:43:18PM 5        That you would be willing to wear an electronic

6 tracker so that you could go back to living, working as in

7 logging and lawn care because you enjoy being outdoors.

8        I don't know if you just don't get it or just don't

9 want to get it, but I think you knew that the minimum sentence

04:43:39PM 10 in this case was at least 10 years, so how you could even

11 stand there and ask for a probation sentence or your release

12 is beyond me.

13        Now, I always try to look at the positive side of

14 individuals, too.   You have a GED.   You did plead guilty and

04:43:54PM 15 admit your involvement in these acts.   You were employed in a

16 good paying job, I think you were paid something like $76,000

17 a year.   You also worked with a fire department and also the

18 Boy Scouts at some point.

19        So almost two different people standing before me,

04:44:13PM 20 but when I look at the negatives vs. the positives here, you

21 scare me.   You're really a dangerous person.   I don't know

22 how your mind operates, quite frankly, because you could leave

23 all these victims in your wake, which you've done, children,

24 daughters, strangers, nieces, children that were babysat for.

04:44:39PM 25 It's a mind that I think people really can't get their arms

1  around to understand how this could possibly exist, but it

2  does exist.   We know that.

3        So the Court has to impose a sentence that makes

4  sense here.   It considers the nature and circumstance of the

04:44:57PM 5  offense, and obviously in this case extremely dangerous

6  conduct, very perverted conduct, disgusting, despicable

7  conduct.

8        Both the acts with these individuals as well as the

9  production of these images that were available I guess for

04:45:21PM 10  others to view as well.   The Court has to look at the fact

11  that these young children are victims that you've left in your

12  wake, and they were young -- 3 to 5, 4 to 6, 13 and 14 years

13  of age -- that will forever be tainted and tarnished by what

14  you've done to them.

04:45:45PM 15        The Court has to reflect in its sentence the

16  seriousness of the offense and could only impose a severe

17  sentence to indicate that both you present a danger and that

18  this type of conduct, once discovered, is something that

19  cannot be thought to be acceptable, so that a message is sent

04:46:06PM 20  to the community and to others that this is conduct that must

21  be punished severely.

22        The sentence must be sufficient, but not more than

23  necessary .   You're 52 years of age.   I guess I could give

24  you 100 years imprisonment, but I'm not sure that would make

04:46:29PM 25  much sense.   We would be paying for your care when you're 90

1  years old.

2          But I do feel that it's sufficient to keep you in

3  jail for as long as possible so that hopefully when you get

4  out, you're unable to perform sexual acts and your sexual

04:46:45PM 5  urges hopefully will be severely diminished by the time you

6  ever get out of jail.

7          Certainly a jail sentence sufficient to deter you

8  from any further contact; to protect victims, whether they be

9  in this community or in any community from your additional

04:47:05PM 10  contact and conduct that you performed over at least a decade

11  that we're aware of here.

12          Hopefully, you'll get some treatment while you're

13  in prison, sex offender counseling and mental health treatment

14  because I think you need it to figure out what's wrong that

04:47:27PM 15  got you to this point and led you to live the type of life

16  that you lived over this 10 year period that we're aware of.

17          Based upon all that, it's the sentence of the Court

18  that regarding Counts 1 through 4, it's the sentence of the

19  Court that the defendant William Schliebener be sentenced to

04:47:47PM 20  300 months incarceration; each count to run concurrent.

21          That you be sentenced to a period of supervised

22  release of 15 years; also on each count to run concurrent.

23          There will be a $100 special assessment for a total

24  of $400.

04:48:06PM 25          And there are several conditions of supervised

1  release, including obviously not engaging in any further

2  criminal activity.

3          Undergo any drug and alcohol evaluation testing and

4  treatment.

04:48:19PM 5          Submitting to a DNA sample.

6          Registering as a sex offender wherever you may

7  work, live, or be contacted with.

8          That you submit to any search conditions as well of

9  your residence or property.

04:48:36PM 10          I'm not going to impose any fine.  I don't think

11  that makes any sense whatsoever.

12          There's also a forfeiture of the computer that was

13  seized in North Carolina, and there's been no request for any

14  restitution, so the Court is not going to impose any

04:48:53PM 15  restitution conditions as well.

16          Anything else from Probation?

17          **MR. SPOGEN:** Yes, Your Honor.   The standard

18  computer restrictions and monitoring software.

19          **THE COURT:** Obviously, Mr. Schliebener, if you're

04:49:04PM 20  released on supervised release you cannot utilize any

21  computers without the permission of the Probation Department,

22  and they must have access to your computers to assure that

23  you're not utilizing those for any purpose of access to any

24  type of pornography, child pornography or any other type of

04:49:25PM 25  improper materials.

1        Anything else?

2        **MR. SPOGEN:** Yes, Your Honor.   There's a few more.

3   The mental health treatment designed for sex offenders.

4        **THE COURT:** Yes.   Again, if you're released to

04:49:36PM 5   supervised release you shall participate in sex offender

6   treatment and any mental health treatment that would be

7   appropriate for that conduct.

8        You're to have no contact with any child under the

9   age of 18 unless approved by the Probation Department.

04:49:52PM 10        Not to loiter within 100 feet of any school yards,

11   playgrounds, arcades or places primarily used by children

12   under the age of 18.

13        And as I stated, you're prohibited from possessing

14   or downloading any child pornography, any visual depiction

04:50:08PM 15   including photograph, film, video, picture, computer or

16   computer-generated images of pictures.

17        You shall register with the state sex offender

18   registration agency wherever you may be employed or reside.

19        And submit to a search of your person, property,

04:50:28PM 20   house, residence, vehicle or papers, obviously with reasonable

21   suspicion concerning a violation of any of the conditions of

22   supervised release.

23        Probation will also monitor your compliance with

24   not buying or subscribing to networks that provide any child

04:50:52PM 25   pornography.

1                    Anything else?

2                    **MR. SPOGEN:** No, Your Honor.  Thank you.

3                    **THE COURT:** Okay.   Mr. Schliebener, I am advising

4    you of your right to appeal this sentence.   Your attorney

04:51:01PM 5    raised a number of issues that could be issues for appeal

6    regarding the calculation of the guidelines as the Court

7    determined them to be, particularly the sexual contact issue

8    and the utilization of the 2013 guidelines manual.  So you

9    reserve your right to appeal those particular issues.

04:51:22PM 10                    I believe the plea agreement left open the

11   sentencing from the minimum sentence to the maximum sentence,

12   and I believe you waived any right to appeal the sentence as

13   long as it complies with the plea agreement.

14                    Anything else?

04:51:38PM 15                    **MR. FIELD:** The Government would move to dismiss the

16   indictment in the case, Your Honor.

17                    **THE COURT:** Mr. Ciccone?

18                    **MR. CICCONE:** I have no objection to that.

19                    **THE COURT:** Okay.   Anything, Mr. Schliebener?

04:51:46PM 20                    Anything further?

21                    **THE DEFENDANT:** Just this last few minutes and

22   Mr. Ciccone --

23                    **THE COURT:** I'm sorry, what's that?

24                    **THE DEFENDANT:** My lawyer can explain to me this

04:51:57PM 25   last stuff that was going on.  What the probation officer

1   mentioned.  I understand that because we went over that

2   before, but then after that it got kind of a little wavy.

3           **THE COURT:** Mr. Field was indicating that there

4   would be a dismissal of the open counts of the indictment, and

04:52:13PM 5   that motion is granted.

6           All right, thank you.

7           (**WHEREUPON**, the proceedings adjourned at 4:52 p.m.)

8                   *   *   *

9                   **CERTIFICATE OF REPORTER**

10

11          In accordance with 28, U.S.C., 753(b), I certify that

12  these original notes are a true and correct record of

13  proceedings in the United States District Court for the

14  Western District of New York before the Honorable Frank P.

15  Geraci, Jr. on November 18th, 2014.

16

17  S/ Christi A. Macri

18  Christi A. Macri, FAPR-RMR-CRR-CRI
    Official Court Reporter

19

20

21

22

23

24

25