UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────

WILLIAM HERBERT SCHLIEBENER, JR.,

        Petitioner,

    v.

UNITED STATES OF AMERICA,

        Respondent.
─────────────────────────────────────

11-CR-6051-FPG
17-CV-6210-FPG

DECISION AND ORDER

## INTRODUCTION

*Pro se* Petitioner William Herbert Schliebener, Jr. filed a Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255. ECF No. 103.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 4, 2014, Schliebener appeared before this Court and entered a guilty plea to four counts of a superseding information: Count 1, which charged a violation of 18 U.S.C. § 2423(a) (transportation of a minor), and Counts 2-4, which charged violations of 18 U.S.C. §§ 2251(a) and (e) (knowing production of child pornography). Following an extensive plea colloquy, Petitioner entered a guilty plea. ECF No. 98 (Transcript of April 14, 2014). The Plea Agreement was also executed in open court. ECF No. 84 (Plea Agreement).

At the sentencing hearing, the Court sentenced Petitioner to a 300-month term of imprisonment. ECF No. 99 (Transcript of November 18, 2014). He appealed his conviction to the Second Circuit Court of Appeals, which affirmed his conviction on January 27, 2016. *United States v. Schliebener*, 632 F. App'x 28 (2d Cir. 2016). In that decision, the Second Circuit expressly rejected two arguments Petitioner made that are relevant here. The Second Circuit found that the application of the "One Book Rule" did not violate the *Ex Post Facto* Clause because

1

Petitioner was given sufficient notice before the commission of the most recent offense. Specifically, the Second Circuit ruled that, because Schliebener could have been prosecuted in North Carolina on all four counts, "the location in which (on his consent) Schliebener was ultimately convicted and sentenced is irrelevant to our analysis of his *ex post facto* claim." *Id.* at 29.

Secondly, the Second Circuit expressly rejected Petitioner's claim regarding the imposition of a two level enhancement for the commission of a sex act in connection with the transportation count. "Although, as Schliebener observes, an analysis of a rape kit test produced no evidence of semen or saliva, the victim also stated that Schliebener had condoms and that she showered before the rape kit test was performed. Given the undisputed evidence in the record that Schliebener committed sex acts on other minors, it was not clear error for the district court to credit the victim's statements and to view them as explaining the seemingly inconsistent rape kit results." *Id*.

On April 6, 2017, Schliebener filed this Section 2255 petition, arguing that his plea was involuntary because he anticipated a shorter sentence based upon his attorney's and the government's expectations as to the sentencing guideline range. He further argues that his attorney, Mr. Ciccone, provided ineffective assistance of counsel because, had Petitioner "been sentence[d] in North Carolina for the North Carolina crimes, the 2013 Sentencing Guideline Manual would not have been applicable to those crimes, and as such, [he] would have been afforded a lesser guidelines rang[e]." ECF No. 103 at 5. Petitioner argues that he was prejudiced because he would not have entered a guilty plea had he been "properly informed." *Id*.

Petitioner's third argument is that counsel's performance was constitutionally deficient in "allowing a two-point enhancement to be added to [his] offense level as the 'rape kit' showed that there had been no evidence of a sexual act." *Id*. Because this argument rests on the assumption

2

that the two point enhancement was error, which the Second Circuit expressly rejected on direct appeal, it will not be addressed further because it is procedurally barred. *See Schliebener*, 632 F. App'x at 29; *United States v. Sanin*, 252 F.3d 79 (2d Cir. 2001).

The Government notes that the plea agreement was executed in open court after an extensive colloquy in which Petitioner was informed that he could be sentenced to life in prison, that the sentencing guidelines were non-binding, and that the plea was knowing and voluntary. The Government further contends that counsel was not ineffective for failing to correctly predict the sentence that would be imposed, and notes that even before *United States v. Booker*, 543 U.S. 220 (2005), rendered the sentencing guidelines merely advisory, the Second Circuit held that an erroneous sentencing estimate did not constitute ineffective assistance of counsel. ECF No. 106 at 9 (citing *United States v. Sweeney*, 878 F.2d 68 (2d Cir. 1989)).

## **SECTION 2255**

Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Accordingly, collateral relief is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokum*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotations and citation omitted). A court may dismiss a Section 2255 motion without a hearing if the motion and the record conclusively show that the petitioner is not entitled to relief. *See, e.g., Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) (district court was not required to hold hearing before deciding federal prisoner's Section 2255 motion

3

based on ineffective assistance of counsel claim alleging that counsel prevented him from exercising his right to testify on his own behalf, where the prisoner made only general allegations and the record contained affidavit from trial counsel credibly describing the circumstances concerning the prisoner's failure to testify). Petitioner "has the burden of meeting the two-pronged test for ineffective assistance set forth in [*Strickland*], by showing: (i) that counsel's performance was deficient and (ii) that the deficient performance prejudiced the defense." *Chang*, 250 F.3d at 84 (internal citation and quotation marks omitted). A hearing is warranted only where the petitioner establishes that his claim is plausible. *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).

An ineffective assistance of counsel claim "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Barrie v. United States*, 11 CIV 8913(RPP), 07 CR 158(RPP), 2012 WL 5464413, at * 3 (S.D.N.Y. Nov. 9, 2012) ("Ineffective assistance of counsel claims are not subject to the general procedural bar that prohibits a petitioner from raising issues in a § 2255 motion which could have been raised on direct appeal.") (citing *Massaro*, 538 U.S. at 504). Accordingly, the Court will review Petitioner's claims below to determine whether he has established ineffective assistance of counsel or that his plea was involuntary.

## **DISCUSSION**

Petitioner sets forth two grounds[1] for finding that counsel's performance was constitutionally deficient under *Strickland*, one of which Petitioner characterizes as rendering his plea involuntary.

---

[1] In addition to the one that is procedurally barred.

## I. Ineffective Assistance of Counsel

In assessing ineffective assistance of counsel claims, the Second Circuit has repeatedly observed that:

> [a] defendant challenging his conviction and sentence on the basis of ineffective assistance of counsel bears a heavy burden. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court adopted a strong presumption that trial counsel provides effective assistance. To overcome this presumption, a defendant must show both (1) "deficient performance," that is, that his trial counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms," *id.* at 688; and (2) "prejudice," that is, that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

*United States v. Diaz*, 176 F.3d 52, 112-13 (2d Cir. 1999).

As to the first *Strickland* prong, "constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "The performance inquiry examines the reasonableness of trial counsel's actions under 'all circumstances' from the perspective of trial counsel at the time." *Greiner*, 47 F.3d at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

"This presumption of reasonableness and deference to counsel apply to the investigative decisions of counsel as well." *United States v. Blow*, No. 2:09-CR-26-1, 2013 WL 2634420, at *12 (D. Vt. June 11, 2013) "As stated by the Supreme Court, counsel's decisions regarding whether to conduct further investigation are, like the rest of counsel's actions, judged against the standard of the applicable 'prevailing professional norms.'" *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)). "A lawyer's decision not to pursue a defense does not constitute deficient

performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord,* 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," *id.* at 588 (citing *Strickland,* 466 U.S. at 690). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*; *see Rompilla,* 545 U.S. at 383 ("reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste").

## II. Petitioner's Claim that his Plea was not Knowing and Voluntary

First, Petitioner claims that counsel's error in predicting his sentencing range rendered the guilty plea unknowing and involuntary. ECF No. 103 at 4. Petitioner states that he "entered into the plea agreement with no knowledge of the 'one-book' rule or that it would be used in [his] case to calculate [his] sentencing range." *Id*. Petitioner claims that, had he been "aware of the actual guideline range, or at the very least a close approximation of the guideline range, [he] would never have entered into the plea agreement." *Id*.

> Due process requires that a guilty plea, to be valid, be made voluntarily, intelligently and knowingly. A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea. A plea is knowing and intelligent when the defendant is competent, aware of the charges and advised by competent counsel.

*Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) (citing *Brady v. United States*, 397 U.S. 742, 747 (1970)) (internal citations omitted).

In his plea colloquy, the Court explicitly told Petitioner that that he was facing a sentence between the mandatory minimum of ten years and a maximum term of life in prison.

> The Court: Now, regarding Count 1, transportation of a minor, which is transportation with intent to engage in criminal sexual activity, do you understand that the charge carries a mandatory minimum term of ten years incarceration?

6

> Defendant: Yes, sir.
>
> The Court: A maximum term of life imprisonment?
>
> Defendant: Yes, sir.

ECF No. 98 at 8.

Further, the Court informed Petitioner that it was not bound by the sentencing guidelines: "the next thing we're going to talk about is the sentencing guidelines, which the Court must consider in determining the appropriate sentence in this case. I'm not bound by the guidelines, but I have to consider those, so I'm going to review those with you at this time." *Id*. at 20. Petitioner indicated that he understood. *Id*. at 21. After a lengthy explanation of the consequences of his plea, Petitioner signed the agreement. *Id*. at 31.

Petitioner was entitled to know the direct consequences of his plea, but that consists only of the legal maximum and minimum sentence. *See Sweeney*, 878 F.2d at 70 ("Defendants may not plead guilty in order to test whether they will get an acceptably lenient sentence."). Petitioner is not entitled to advance knowledge of what the actual sentence will be.

> [P]redicting a guidelines sentence is not the same as determining the minimum or maximum sentence allowable under a statute . . . The attorney's representations here regarding the sentencing range were at best merely an estimate reflecting what he believed the likely range would be. The law in this Circuit prior to the Sentencing Guidelines was clear that a defendant was not entitled to withdraw a guilty plea simply because his attorney erroneously predicted his sentence.

*Sweeney*, 878 F.2d at 70; *see also Khawar v. United States*, 10-CR-01082, 2016 WL 6270732, at *4 (S.D.N.Y. Oct. 26, 2016) (Defendant "was aware of his sentencing exposure upon pleading guilty."). Because the standard for withdrawing a plea is lower than that on a motion to set aside a guilty plea after sentence, Petitioner's argument is similarly unavailing. *Sweeney*, 878 F.2d at 70.

Petitioner's plea was voluntary and intelligent because: (1) the Court informed him of the sentencing range; (2) the Court sentenced him within that range; and (3) his attorney's failure to correctly predict the guidelines range did not render the plea involuntary. Petitioner was expressly informed that the sentencing guidelines would not bind the Court's decision. Rather, the Court was bound by the statutory minimum and maximum. *See, e.g.*, *Wang v. United States*, 13-CR-452 (KBF), 2016 WL 1436679, at *6 (S.D.N.Y. Apr. 11, 2016) ("[The defendant] affirmed that he understood the maximum possible penalties that he faced and that neither his attorney nor the Government could know what his sentence would be. [The defendant] also affirmed that no one had coerced him or made any promise to him about what his sentence would be if he pleaded guilty.").

To the extent that Petitioner argues that his ignorance of the one-book rule rendered his plea involuntary or unknowing, the one-book rule is simply a component of the sentencing guidelines and the argument fails for the reasons set forth above. The Second Circuit, in Petitioner's direct appeal, expressly held that he could have been prosecuted and sentenced in precisely the same manner in North Carolina. *Schliebener*, 632 F. App'x at 29 ("[I]t is undisputed that no waiver was needed for the government to prosecute all counts, including the transportation count, in a single district in North Carolina.") (citing 18 U.S.C. § 3237(a)). Thus, the application of the one-book rule was not something that Petitioner could have avoided by refusing to enter a plea in New York.

That both defense counsel and the prosecutor anticipated a different sentencing guideline range does not call into question the knowing and voluntary nature of the plea. The Second Circuit has explained that:

> [t]o be enforceable, guilty pleas . . . must be knowing and voluntary. [The defendant] argues that his capacity to enter knowingly and voluntarily into the

8

agreement was limited by imperfect knowledge at the time the agreement was reached. Specifically, he claims that his mistaken belief, shared by the government and the District Court, that the Guidelines were mandatory rather than advisory, limited his capacity to freely and intelligently enter into the bargain and voids the agreement for mutual mistake. We find these arguments unpersuasive.

*United States v. Roque*, 421 F.3d 118, 122 (2d Cir. 2005). Here, the mistaken belief regarding the merely advisory guidelines range, did not limit Petitioner's capacity to freely and intelligently enter into the bargain.

A guilty plea is deemed involuntary and therefore void only if it is "the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). Petitioner makes no such allegations here. Further, as in the case of defendants who entered into a plea when they believed that the sentencing guidelines were mandatory, Petitioner's inability to know the ultimate sentence to be imposed "does not impugn the truth or reliability of his plea," and Petitioner "is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action." *Roque*, 421 F.3d at 24. Thus, Petitioner's argument that his plea was not knowingly and voluntarily entered must be rejected.

### III. Petitioner's Claim that Counsel was Ineffective

Petitioner's argument could also be construed as a claim that his plea was involuntary by the allegedly ineffective assistance of counsel. Such an argument is also unavailing. As the Second Circuit has said: "we do not believe that appellant may avoid the effect of our precedents by characterizing a mistaken prediction [as to sentencing] as ineffective assistance of counsel." *Sweeney*, 878 F.2d at 70.

The Court finds that Petitioner's assertions do not overcome the maxim that counsel is "strongly presumed 'to have rendered adequate assistance and made all significant decisions in the

9

exercise of reasonable professional judgment.'" *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 690). The Court finds that counsel was not ineffective for failing to correctly predict Petitioner's sentence.

## IV. Petitioner's Second Claim that Counsel was Ineffective

Petitioner's argues that counsel was ineffective because Petitioner's decision to waive his jurisdictional argument, which permitted him to be prosecuted in the Western District of New York, "left [him] vulnerable to a much higher sentencing guideline range than the one [he] was lead to believe was applicable or even available." ECF No. 103 at 5. Petitioner argues that had he "been sentenced in North Carolina for the North Carolina crimes . . . [he] would have been afforded a lesser guideline rang[e]." *Id*. Petitioner argues that he would not have entered into the plea agreement had he "been properly informed." *Id*.

As noted above, the underlying basis of Petitioner's argument—that only his jurisdictional waiver permitted the application of the one-book rule—was conclusively rejected by the Second Circuit on direct appeal. *Schliebener*, 632 F. App'x at 29 ("[N]o waiver was needed for the government to prosecute all counts . . . in a single district in North Carolina."). Petitioner would have been subject to the same, merely advisory, guidelines range in North Carolina even in without a waiver. Advice to waive the jurisdictional argument does not constitute ineffective assistance of counsel under these circumstances.

Further, Petitioner's claim that the waiver "left [him] vulnerable to a much higher sentencing guideline range than the one [he] was lead to believe was applicable or even available" (ECF No. 103 at 5) is belied by the record. Petitioner was informed that the maximum sentence for the crimes to which he pled guilty was life in prison. Thus, it is simply untrue that the waiver left him vulnerable to a greater sentence than he thought was "even available."

10

Petitioner's second argument is merely a variation on the first—that his lack of knowledge of the sentence that would ultimately be imposed upon him rendered his plea invalid because his attorney was ineffective for failing to correctly predict the final sentence. Attributing Petitioner's sentence to the jurisdictional waiver, a challenge that the Second Circuit rejected on direct appeal, does not alter the analysis. Petitioner knowingly and voluntarily pled guilty, fully aware that he was subjecting himself to life in prison. That the sentence imposed—300 months—was greater than he and his attorney anticipated, does not render the plea involuntary or render counsel ineffective. Instead, it reflected the serious and continuing nature of the crimes committed and the need to protect the community.

## **CONCLUSION**

Petitioner failed to show that his plea was not voluntary and knowing or that counsel's performance was constitutionally deficient, and therefore his Section 2255 Motion (ECF No. 48) is DENIED. The Clerk of Court is directed to close Case # 17-CV-6210-FPG.

The Court declines to issue a certificate of appealability because Petitioner failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253. The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this Order would not be taken in good faith and that leave to appeal as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

IT IS SO ORDERED.

Dated: April 1, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court